IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK KAHRIGER,<br><br>        *Plaintiff,*<br><br>  v.<br><br>XAVIER BECERRA,<br><br>        *Defendant.* | CIVIL ACTION<br>NO. 23-4384 |

**Pappert, J.**                                                                                                                                              May 13, 2024

## MEMORANDUM

      Longtime Department of Health and Human Services employee and *pro se* plaintiff Jack Kahriger sued Xavier Becerra, Secretary of the United States Department of Health and Human Services, alleging management at HHS discriminated against him because he is a man. He cites numerous instances where the agency disciplined him and other male colleagues more harshly than women who engaged in similar conduct. After one such instance, he was demoted from a supervisory role and transferred from HHS's Philadelphia office to Trenton, New Jersey. He asserts gender discrimination, hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964.

      HHS[1] moves to dismiss, contending Kahriger fails to allege facts showing he was discriminated against because of his gender. HHS further contends that Kahriger failed to timely exhaust his administrative remedies with respect to his hostile work environment claim, and in any event, failed to plead one on the merits. Finally, HHS

---

[1]     The Court refers to Becerra and HHS interchangeably throughout.

1

argues the retaliation claim should be dismissed because Kahriger fails to allege causation.

The Court grants in part and denies in part HHS's motion. The Court denies HHS's motion with respect to the gender discrimination and retaliation claims because Kahriger alleges enough facts suggesting discovery could reveal proof of his claims. However, the hostile work environment claim is dismissed without prejudice because Kahriger failed to timely exhaust his administrative remedies and did not allege facts showing a basis for equitable tolling.

I

A

Kahriger worked in HHS's Office of Inspector General for twenty-eight years. (Compl., ECF No. 1, ¶ 1–2).[2] Starting as an auditor, Kahriger was promoted to senior auditor in 1998, and in January 2017, was promoted to Assistant Regional Inspector General for Audit Services (ARIGAS). (*Id.* ¶¶ 15–16). As an ARIGAS, Kahriger led a group of seven auditors and reported directly to Jason Jelen, the Regional Inspector General for Audit Services (RIGAS). (*Id.* ¶ 21).

B

Kahriger dated Denise DeLeon, an office administrator, from July 2012 to October 2014. (*Id.* ¶¶ 33, 35, 37). After they broke up, Kahriger alleges that DeLeon harassed him and others in the office. For instance, DeLeon allegedly posted

---

[2]    All page numbers are referring to the ECF number.

Kahriger's picture along with his personal information on a social media site for individuals to share negative information about people they dated. (*Id.* ¶¶ 45–49). Among other allegations, the post stated that Kahriger had been physically violent with his ex-wife. (*Id.* ¶ 50). In July 2017, Kahriger confronted DeLeon about the post and told her he would report her to management if she did not remove it. (*Id.* ¶¶ 53–54).

Kahriger shared his feelings with Sheila Warriner, a senior auditor and a member of Kahriger's team, and sent her the following texts about DeLeon:

- "She trashed me on the internet with rage." (*Id.* ¶ 96).

- "She is trying to trash my reputation because she doesn't want anyone else to be with me." (*Id.* ¶ 97).

- "The office terrorist strikes again." (*Id.* ¶ 98).

- "She is trying to f [sic] me up." (*Id.* ¶ 99).

- "I can continue to ignore (DeLeon). I can sue her. I can report her to HQ. I def have enough to take formal action. I just prefer that it end. But I know if I did the same to her I would be in big trouble by now . . . she would report me to work and sue me. I can really attract them!" (*Id.* ¶ 42).

At the time, Warriner suspected DeLeon sent an unsolicited drug to Warriner's new residence and that DeLeon may have vandalized photos on her desk. (*Id.* ¶¶ 43, 56). Warriner raised her concerns about DeLeon to Jelen and an attorney at HHS's Washington, D.C. headquarters, (*id.* ¶¶ 57–62), and she also sent Kahriger the following texts:

- "I think it's time [RIGAS] Jason [Jelen] stepped in. He has the power. He should use it. If there is ever a woman that is the 'c' word she's it!!!" (*Id.* ¶¶ 41, 109).

- "Hahahaha. She's a child. No wonder she's never been married." (*Id.* ¶ 105).

3

- "But what is she saying about you? Like you have said, you haven't been hanging out with her for like 3 years. She is certifiably nuts!" (*Id.* ¶ 106).

- "Yeah I mean she must have been really hurt by you. But still it takes an evil person to do what she is doing. That's not normal. Especially after all this time. I'm telling you she doesn't give two shits about Romano. She just knows you don't like him. I don't know what you can do about her but there's got to be something. She should not be allowed to get away with this crap." (*Id.* ¶ 107).

- "Exactly. That's what makes her stupid on top of psychotic. You should sue her." (*Id.* ¶ 108).

Eventually, Warriner and DeLeon reconciled. (*Id.* ¶¶ 67–68). Thereafter, Kahriger alleges that Warriner became hostile toward him and implied that Kahriger may have been the one who damaged her photos. (*Id.* ¶ 70). Kahriger thought a "trust issue" had formed between them, and he suggested Warriner transfer to a different team. (*Id.* ¶ 70). Warriner agreed to the transfer and filed a complaint against Kahriger to agency headquarters. (*Id.* ¶¶ 72, 74).

This was not the first time an employee lodged a complaint against Kahriger. In 2016, Kahriger was investigated for purportedly "rating" female co-workers' looks. (*Id.* ¶ 160). Kahriger believes DeLeon was one of the complainants that prompted the investigation. (*Id.* ¶¶ 160, 165). Kahriger says he told the investigators that DeLeon engaged in the same behavior by rating men in the office as either a "hottie" or a "nottie," but they did not investigate DeLeon. (*Id.* ¶ 160). Kahriger waited seventeen months before a supervisory human resources specialist involved in the investigation, Camelia Harris, told Kahriger the allegations were determined to be "unfounded that same day," and Harris added that "[t]his agency doesn't treat men fair." (*Id.* ¶ 166).

4

C

On October 6, 2017, Kahriger returned to the office after hours to retrieve a pair of sneakers following a 76ers game when he encountered DeLeon and another co-worker, Velena Flores. (*Id.* ¶ 80). Both women were allegedly drunk. (*Id.*) Flores then launched into a profanity-laced rant, allegedly telling Kahriger he is a "fucking dufus" and "ain't getting no pussy." (*Id.* ¶ 82). Kahriger recorded the incident on his phone and says that he did not yell, curse or otherwise insult the women. (*Id.* ¶ 83). On October 10, after the long Columbus Day weekend, Kahriger was ordered to telework indefinitely. (*Id.* ¶ 84). When Kahriger asked why, the human resources department informed Kahriger it was easier for one person to be sent home from the office rather than two, namely, DeLeon and Flores. (*Id.* ¶ 86).

D

On October 18, representatives from HHS headquarters in Washington, DC interviewed Kahriger regarding Warriner's complaint. (*Id.* ¶¶ 89–92). Kahriger says that Warriner only shared cherry-picked texts from Kahriger and omitted the texts she sent. (*Id.* ¶¶ 95, 103). So Kahriger showed the interviewers Warriner's texts about DeLeon, but he says they did not care. (*Id.* ¶¶ 101–03). Kahriger also showed the investigators the web post that DeLeon created and the video of his after-hours encounter with DeLeon and Flores. (*Id.* ¶¶ 112–13). After viewing DeLeon's post, one of the investigators told Kahriger she would look into it. (*Id.* ¶ 113). Ultimately, the agency declined to open an investigation into the web post because the agency "did not see a potential federal criminal violation." (*Id.* ¶ 115).

After the interview, Kahriger says the agency changed his SF-50 (Notice of Personnel Action) for his ARIGAS position to include a one-year probationary period. (*Id.* ¶ 126). Kahriger alleges the agency took such action to prevent him from appealing to the Merit Systems Protection Board. (*Id.* ¶ 132).

E

On November 27, 2017, one of Kahriger's co-workers, Rob Baiocco, filed an EEO complaint against DeLeon in part because she called him an ethnic slur implicating his Italian heritage, and he listed Kahriger as a witness in the complaint. (*Id.* ¶¶ 135, 139). Kahriger says he provided a key piece of evidence, namely, text messages that DeLeon apparently wrote about Baiocco. (*Id.*) Soon after Baiocco's interview, Baiocco was ordered to telework because of his temper. (*Id.* ¶ 141).

On December 13, 2017, Kahriger was demoted to senior auditor and transferred to Trenton. (*Id.* ¶ 148). Amy Frontz, the Assistant Inspector General for Audit Services, told Kahriger that his demotion and transfer were because of unprofessional text messages that he sent to Warriner while she was working under his supervision. (*Id.* ¶¶ 143, 147). Around the same time, Kahriger says that Jason Jelen was also demoted and transferred to New York after being subject to complaints by the same group of women. (*Id.* ¶ 155).

On March 14, 2018, Kahriger filed charges of discrimination with the EEOC. (*Id.* ¶ 8). Over five years later, he received his right to sue letter. (*Id.* ¶ 9).

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief. *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (quoting *Connelly*, 809 F.3d at 786–87).

III

A

A *prima facie* gender discrimination claim requires a plaintiff to show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of discrimination. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015). At the motion to dismiss stage, however, a plaintiff need only allege enough facts to raise a reasonable expectation that discovery will reveal proof of his claims.[3] *Connelly*, 809 F.3d at 789.

HHS contends that Kahriger fails to allege facts indicating his demotion and transfer occurred under circumstances that could give rise to an inference of discrimination, namely, because he does not allege similarly situated comparators were treated more favorably.[4] (Mot. To Dismiss, ECF 9-2, at 12). However, plaintiffs are not

---

[3] HHS argues the Court should dismiss Kahriger's claim because he fails to satisfy the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But that analysis only applies at summary judgment. At this stage, a plaintiff "is not obliged to choose whether [he] is proceeding under a mixed-motive or pretext theory, nor is [he] required to . . . engage in the sort of burden-shifting rebuttal that *McDonnel Douglas* requires at a later stage in the proceedings." *Connelly*, 809 F.3d at 791.

[4] It is unclear if Kahriger is also asserting a disparate treatment claim based on HHS's failure to investigate DeLeon's web post. Failure to investigate claims of harassment can be discrimination under Title VII if the failure to investigate is based on the victim's gender. *See Hare v. Potter*, 220 F. App'x 120, 134 (3d Cir. 2007). However, such a claim has limitations. *Cherkasky v. Boyertown Area Sch. Dist.* No. 21-5204, 2022 U.S. Dist. LEXIS 100246, at *18 (E.D. Pa. June 6, 2022) (adding the claim is "rather novel"). For instance, "the issue complained of, if left uncorrected, must be of enough significance to qualify as an adverse action." *Id.* (citing *McFalls v. BrightView Landscapes, LLC*, No. 18-2871, 2020 WL 1922828, at *7 (E.D. Pa. Apr. 21, 2020)). Additionally, the alleged acts that the employer fails to investigate must be of a serious nature. *Id.* (citing *Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 804 (N.D. Ill. 2014), *aff'd sub nom.* 640 F. App'x 534 (7th Cir. 2016). And finally, such a claim does not arise when a plaintiff is merely unsatisfied with the results of the employer's investigation. *Id.* at *19. Here, Kahriger never alleges he suffered an adverse action because of any supposed deficiency in HHS's investigation of DeLeon's web post. Moreover, Kahriger's complaint

required to plead comparator evidence to support an inference of discrimination. *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). "Such an inference could be supported in a number of ways," including facts showing similar discrimination of other employees, direct evidence of discrimination or actions by supervisors suggesting discriminatory animus. *Id.*

Construing Kahriger's *pro se* complaint liberally, he alleges enough to nudge his claim "from conceivable to plausible." *Twombly*, 550 U.S. at 555. Following an apparently unfounded allegation that he was "rating" women in the office, an HR supervisor, Camelia Harris, told Kahriger, "This agency doesn't treat men fair." (Compl. ¶ 166). Such an allegation—particularly from a "Supervisory Human Resources Specialist" involved in that investigation—raises a reasonable expectation that discovery could reveal proof that HHS discriminated against Kahriger because of his gender. *See Connelly*, 809 F.3d at 789.

IV

A plaintiff must exhaust his administrative remedies before bringing a claim under Title VII. To timely exhaust administrative remedies for Title VII claims, a federal employee must initiate contact with an EEO counselor within forty-five days of the matter alleged to be discriminatory or, in the case of personnel action, within forty-five days of the effective date of the action. 29 C.F.R. § 1614.105(a)(1).

---

acknowledges that HHS provided "at least *some* response" to his complaint. *Cherkasky*, 2022 U.S. Dist. LEXIS 100246, at *19–20.

Unlike discrete acts of discrimination, a hostile work environment claim is a series of separate acts that, when viewed together, amount to an unlawful employment practice. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). Thus, the entire claim is actionable as long as one act contributing to the hostile work environment falls within the forty-five-day window. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

Kahriger first contacted an EEO counselor on February 1, 2018.[5] (ECF 9-2, at 26). For Kahriger's claim to be timely, at least one act upon which the hostile work environment claim is based must have occurred on or after December 18, 2017, forty-five days prior to February 1, 2018. However, the incidents that constitute the thrust of his hostile work environment claim, namely, DeLeon's web postings and his after-hours encounter with Flores and DeLeon, occurred in July and October 2017, respectively. (Compl. ¶¶ 45, 79).

Only the effective dates of Kahriger's demotion and transfer fall within the forty-five day window, and Kahriger contends the continuing violation doctrine should apply and allow him to aggregate the prior events with the demotion and transfer such that he could bring his hostile work environment claim. (Resp. To Mot. To Dismiss, ECF No. 11, at 16–17).

---

[5]  The Court may consider the EEO complaint without converting HHS's motion to one for summary judgment. *See, e.g., Pension Ben. Guard. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Washington v. Dejoy*, No. 21-4831, 2022 WL 16553378, at *2 n.2 (E.D. Pa. Oct. 31, 2022) ("It is well-settled in the Third Circuit that the Court may properly consider attached EEO documents when deciding a motion to dismiss, especially when those documents are, as here, integral to the [c]omplaint.").

But the discrete acts of demotion and transfer are not actionable as part of a hostile work environment claim.[6] *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). *See also McCann v. Astrue,* 293 F. App'x 848, 850 (3d Cir. 2008) ("The law makes clear that discrete discriminatory acts that are actionable on their own may not be aggregated under a continuing violation theory."); *Rotteveel v. Lockheed Martin Corp.*, No. 01-6969, 2003 U.S. Dist. LEXIS 12329, at *15 (E.D. Pa. July 15, 2003) ("The actions upon which plaintiff's claims are based, i.e., demotion, failure to promote, etc . . . constitute discrete discriminatory acts to which the continuing violation theory is inapplicable."). *See also Riley v. St. Mary Med. Ctr.*, No. 13-7205, 2014 U.S. Dist. LEXIS 57065, at *11–12 (E.D. Pa. Apr. 23, 2014); *Biddle v. Grandview Hosp.*, No. 14-6614, 2015 WL 1293211, at *3–4 (E.D. Pa. Mar. 20, 2015).

The hostile work environment claim is dismissed without prejudice. While the administrative exhaustion requirements are subject to equitable tolling, Kahriger has not alleged facts indicating it is appropriate here.[7] *See, e.g., Scott v. Wilkie*, No. 19-

---

[6]  Some courts have held that terminating an individual's employment may be considered part of a plaintiff's hostile work environment claim. *See Cubbage v. Blooomberg, L.P.*, No. 05-2989, 2008 WL 1836668, at *5 (E.D. Pa. 2008) ("[A]s a matter of law [a plaintiff's] termination can constitute a component part of her hostile work environment claims . . . .[o]ne can posit situations where the act of terminating an employee and the alleged hostile work environment are inextricably linked").

However, the Third Circuit's guidance in *O'Connor v. City of Newark*, which interpreted the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, is instructive here. *O'Connor* differentiated between "discrete acts" and acts that could constitute a continuing violation, noting that "individually actionable allegations" of termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training and wrongful accusation "cannot be aggregated" in a hostile work environment claim. *O'Connor*, 440 F.3d at 127. Here, Kahriger's December 24, 2017 demotion and transfer are akin to the "discrete acts" mentioned in *O'Connor*, and may not be used to aggregate with other acts to constitute a hostile work environment claim. *See Riley v. St. Mary Med. Ctr.*, 2014 U.S. Dist. LEXIS 57065, at *11–12 (E.D. Pa. Apr. 23, 2014); *Biddle v. Grandview Hosp.*, No. 14-6614, 2015 WL 1293211, at *3–4 (E.D. Pa. Mar. 20, 2015).

[7]  The continuing violations doctrine also does not apply "if a plaintiff was aware of, and had complained about, hostile treatment because 'allowing the plaintiff to avoid the statutory timely

5136, 2023 WL 3324693, at *3–4 (E.D. Pa. May 9, 2023) (noting six situations in which equitable tolling is appropriate, including, *inter alia*, where the defendant misled the plaintiff, where the plaintiff was prevented from asserting his rights in an "extraordinary way," or where the plaintiff asserted his rights in the wrong forum). Kahriger will be allowed to amend his complaint to the extent he can allege facts which could establish a basis for equitable tolling.

V

Kahriger has adequately pled a Title VII retaliation claim. A *prima facie* Title VII retaliation claim requires a plaintiff to show: (1) that he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See, e.g., Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995). Again, to survive a motion to dismiss, a plaintiff need only allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence of those elements. *Connelly*, 809 F.3d at 789.

Kahriger alleges he engaged in protected activity when he participated as a witness in Baiocco's EEO complaint against DeLeon. (Compl. ¶ 139). *See Moore v. City*

---

filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.'" *Biddle*, 2015 WL 1293211, at *3 (quoting *Santee v. Lehigh Valley Health Network, Inc.*, No. 13-3774, 2013 WL 6697865, at *7 (E.D. Pa. Dec. 19, 2013). *See also Bennett v. Susquehanna Cnty. Children & Youth Servs.*, 592 F. App'x 81, 85 (3d Cir. 2014) ("[T]he [continuing violation] doctrine 'does not apply when plaintiffs are aware of the injury at the time it occurred.'" (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 417 n.6 (3d Cir. 2003))). Kahriger complained about Flores's tirade and DeLeon's web post during his interview regarding Warriner's complaint in October 2017.

*of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (noting Title VII's anti-retaliation provision protects those who participate in Title VII proceedings). Roughly two weeks later, he was demoted and transferred to the Trenton office, close enough to be "unusually suggestive of a retaliatory motive."[8] *Qin v. Vertex, Inc.*, No. 23-1031, 2024 WL 1920379, at *11 (3d Cir. May 2, 2024); *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[8] In support of its motion, HHS attached an affidavit from Amy Frontz. *See* (ECF No. 10-2). The Court will not consider the affidavit at this stage. *See Schmidt v. Skolas,* 770 F.3d 241, 250 (3d Cir. 2014) ("[A]n affidavit from a defendant may not be considered in deciding a motion to dismiss.").